UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA

v.

TOLULOPE SAMUEL BODUNDE A.K.A.
KENNETH SNIPES

Crim. No. 3:20-cr-111 (JAM)

August 23, 2020

**FILED UNDER SEAL**

AUG 24 2020 PM 1:35
FILED-USDC-CT-NEW.HAVEN

## GOVERNMENT'S EMERGENCY MOTION FOR MODIFICATION OF CONDITIONS OF PRETRIAL RELEASE

The United States submits this emergency motion for a modification of defendant Tolulope Samuel BODUNDE's ("BODUNDE") conditions of pretrial release.   The Government respectfully requests that BODUNDE's conditions of pretrial release be modified so as to restrict BODUNDE from any employment that involves managing, facilitating, reviewing, or otherwise being involved in the financial transactions of others.   In the alternative, the Government requests that BODUNDE's proposed employer be provided notice by the Government or by the United States Probation Office ("USPO") of the nature of the charges pending against BODUNDE as a condition of his ability to be approved for employment while on home incarceration.

### I.    Procedural History

A federal grand jury returned an indictment against the defendant and other co-conspirators on July 15, 2020.  *See* 3:20-CR-111 (JAM), Dkt. No. 1 (sealed to the public pending the arrests of BODUNDE's co-conspirators).   The defendant is charged with one count of conspiracy to commit wire fraud occurring between August 2014 and April 2020, and two counts of wire fraud occurring in 2017.   He was arrested on August 7, 2020, presented in the District of New Jersey, and ordered released to home incarceration pending trial.   The Government did not seek detention and had no objections to his conditions of pretrial release.   The defendant was arraigned via video

1

in the District of Connecticut on August 10, 2020, wherein this Court effectively adopted the previously ordered conditions of release.

## II.    Factual Background

### A.  Offenses Alleged in the Indictment

As alleged in the indictment, from approximately August 2014 until April 2020, BODUNDE was a member of an international conspiratorial network that conspired to commit, and did commit, wire fraud in the form of business email compromise schemes.   Within that conspiracy, BODUNDE's roles and responsibilities included the facilitation of fraudulent wire transactions.   Specifically, BODUNDE illegally gained access to the bank account information or funds of victim companies or individuals.   BODUNDE then directed the victims' funds, via wire transfer, into other accounts controlled by his criminal network.   BODUNDE's access to the banking information of other companies and individuals and his use of that information to facilitate wire transfers was the gravamen of the offenses he is charged with, and was essential to his ability to commit his crimes and fulfill his role in the conspiracy.

The total number of victims during the course of the conspiracy is well over 1,000 companies and individuals.   The total loss amount is estimated to be greater than $2 million, while the total attempted loss amount is estimated to be greater than $200 million.

### B.  BODUNDE'S Fraudulent Behavior Leading up to his Arrest

As part of the conspiracy, BODUNDE tricked some victims into thinking he was their romantic partner, and that he needed financial assistance.   These individuals were often elderly, lonely, or otherwise vulnerable persons who believed that they had met a romantic partner online, when in fact they were communicating with BODUNDE.   These individuals would often be used

2

by BODUNDE and his co-conspirators to launder stolen money; they also frequently forwarded their own personal funds to the criminal network.

One individual is identified in the indictment by initials G.S.   Another such individual, whose identity is known in full to the Government, is described herein as M.H.   The Government understands that both G.S. and M.H. have lost much of their life savings by sending it to BODUNDE and his co-conspirators under false pretenses.

Following his arrest, BODUNDE provided a statement to law enforcement wherein he stated, in sum and substance, that he had minimal contact with G.S. and had not spoken with her in years.   Since his arrest, the Government has examined BODUNDE's cell phone and recovered evidence showing that BODUNDE and other unindicted co-conspirators were actively involved in wire fraud crimes up until the date of his arrest, and had also been moving or otherwise receiving money from and through G.S., as well as interacting with M.H.   In fact, evidence from his phone shows he and/or his co-conspirators had fraudulently received money from G.S. as recently as August 6, 2020.   In addition, evidence from BODUNDE's phone showed that less than a month ago (and approximately one week prior to his arrest), BODUNDE was involved in a fraudulent wire transfer for $19,000 that occurred on or around July 29, 2020, and which is currently the subject of a federal criminal investigation in another district.

### C.  BODUNDE's Proposed Employment and Associated Job Description

On August 20, 2020, the USPO contacted the parties to inquire about their positions on BODUNDE'S proposed employment to "begin working an online accounts payable position for M Group."   The Government understands the job entails BODUNDE working remotely from home, through his home computer and home internet access, with no in-person supervision by his

employer or by USPO.

Before responding with its position, the Government found the following description for

this job posting with "M Group" through a search of open sources databases:

<u>Position Overview</u>
The Accounts Payable Coordinator functions as the accounts payable point of contact for
a business unit or a set of vendors, working within the Controllers Group.

<u>Responsibilities</u>
Code and batch invoices for processing by business unit / agency
Review invoices to ensure the vendor is active, vendor record is up to date and confirm the
invoice is not a duplicate
Monitor queues in the document management system to follow up on issues that need to
be resolved, working with the business unit / agency where necessary
Monitor the AP group mailbox – print electronic invoices, respond to internal and external
inquiries such as status of invoices sent for processing, status of payment and status of new
vendor set-up
Review open payables and liaise with agency finance teams to ensure payment requests are
submitted
Assist with the processing of intercompany invoices
Research unusual transactions; bring inconsistencies and problems to the attention of
management as required
Collect and review new vendor paperwork – ensure that all the required documentation has
been submitted and due diligence has been performed
Adhere to GroupM / WPP policies & procedures to maintain compliance with section 404
of the Sarbanes-Oxley Act
**Prepare wire transfer package / support for outgoing wire transfers**
**Process outgoing wire transfers in online banking system**
**Manage the settlement process of invoices paid via wire in the general ledger**
**Archiving wire paperwork with 3rd party provider**

**(Emphasis added.)[1]**

The Government is also in receipt of another description of the same job, except that this

description appears to have been provided by BODUNDE, upon inquiry.   Significantly, the four

critical job responsibilities related to processing wire transfers—the very type of financial

---

[1] https://www.salary.com/job/groupm-north-america/accounts-payable-coordinator/067f2dcf-c7a3-4aa1-a50a-
4b2c0cb45bbb (last visited August 22, 2020).

transactions that are the subject of the indictment—are not included in the job description believed to be provided by BODUNDE.

### III.    Legal Standard

Under 18 U.S.C. § 3142, this Court can impose restrictions on a defendant's pretrial release that include any "condition that is reasonably necessary . . . to assure the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B)(xiv).

The Second Circuit has indicated that safety under the Bail Reform Act extends to financial or pecuniary safety.   *See United States v. Madoff*, 316 F. App'x 58, 59-60 (2d Cir. 2009).   Indeed, several courts have considered non-physical harm—including economic harm—under the dangerousness prong of the bail inquiry.   *See, e.g., United States v. Reynolds*, 956 F.2d 192, 192 (9th Cir. Jan. 29, 1992) (order) ("We further hold that danger may, at least in some cases, encompass pecuniary or economic harm."); *United States v. Provenzano*, 605 F.2d 85, 95 (3d Cir. 1979) ("We agree and hold that a defendant's propensity to commit crime generally, even if the resulting harm would be not solely physical, may constitute sufficient risk of danger to come within the contemplation of the [Bail Reform] Act."); *United States v. Zaragoza*, No. CR-08-0083 (PJH), 2008 WL 686825, at *3 (N.D. Cal. Mar. 11, 2008) ("In assessing danger, physical violence is not the only form of danger contemplated by the statute. Danger to the community can . . . even encompass pecuniary or economic harm."); *United States v. Schenberger*, 498 F. Supp. 2d 738, 742 (D.N.J. 2007) ("A danger to the community does not only include physical harm or violent behavior. The concept of 'safety' may include non-physical harm."); *United States v. Persaud*, No. 05-cr-368, 2007 WL 1074906, at *1 (N.D.N.Y. Apr. 5, 2007) (agreeing "that economic harm qualifies as a danger within the contemplation of Bail Reform Act"); *United States v. Gentry*, 455

F. Supp. 2d 1018, 1032 (D. Ariz. 2006) ("Danger, however, may be assessed in terms other than the use of force or violence."); *United States v. Giordano*, 370 F. Supp. 2d 1256, 1270 (S.D. Fla. 2005) ("There can be no question that an economic danger, like that posed by a serial defrauder, falls under the broad umbrella of 'dangerousness' as that term is used throughout the Bail Reform Act."); *United States v. Harris*, 920 F. Supp. 132, 133 (D. Nev. 1996) ("Often it is economic or pecuniary interests of a community rather than physical ones which are most susceptible to repeated danger by a released defendant."); *United States v. Masters*, 730 F. Supp. 686, 689 (W.D.N.C. 1990) ("Defendant asserts that he does not pose a *physical* danger to the community. However, the Court believes it must also consider the danger of a person who continues to participate in possibly fraudulent schemes." (emphasis in original)).

### IV.    Argument

Although the Government has not sought detention in this case, the Government requests, and the court must impose, conditions of release that ensure the safety—including economic safety—of others in the community.  A federal grand jury found probable cause to believe that BODUNDE victimized multiple individuals and businesses during the course of a multi-year, multi-country wire fraud conspiracy through his facilitation and manipulation of wire transactions. Although the indictment alleges the end date of the conspiracy as April 2020, upon a review of the evidence collected from BODUNDE following his arrest, the Government believes that BODUNDE was participating in the wire fraud conspiracy up to the day of his arrest on August 7, 2020.  To allow him to work at a company where his responsibilities appear to involve managing the bank accounts and wire transactions of others would be putting an entire new demographic of individuals at risk of being victimized by BODUNDE and his co-conspirators.   BODUNDE

would have direct access to the exact types of bank account and wire information that form the basis of the charges in the indictment.

At the very least, "M Group" should be informed of the nature of the charges against BODUNDE so they can take steps to minimize any risks from employing BODUNDE.  As it stands, the job is a teleworking position where BODUNDE would be working remote with no one to physically observe what he is doing.  The employer would be in the best position to know whether BODUNDE would have access to information that he could use to commit additional wire frauds.  The company also has a legitimate interest in preventing its own victimization and the victimization of its customers, clients, associates, and employees.  This is particularly important in light of the fact that two of BODUNDE's co-conspirators are still at large, that he is now connected to another fraudulent wire transaction that occurred less than a month before his projected employment start date, and that he is believed to have been in regular contact with his unindicted co-conspirators all the way up to the date of his arrest on August 7, 2020.  The Government respectfully submits that the risk that the employer's clients, associates, customers, or employees, or the employer itself will become victims of BODUNDE and his co-conspirators is too great for this Court to not intervene.

### V.    Conclusion

The Government respectfully moves this Court for a modification of BODUNDE's pretrial conditions of release so as to restrict BODUNDE from any employment that involves managing, facilitating, reviewing, or otherwise being involved in the financial transactions of others.   In the alternative, the Government respectfully requests that this Court order that "M Group" be informed of the nature of the pending charges against BODUNDE before he be allowed to begin work there.

Such notice should be made by the Government or the United States Probation Office.

Given that the defendant is projected to begin work on Monday, August, 24, 2020, the Government requests an emergency hearing on this matter and can be available by phone or video appearance at the Court's convenience.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

/s/ Margaret Donovan
MARGARET DONOVAN
ASSISTANT U.S. ATTORNEY
FEDERAL BAR NO. phv09772
157 CHURCH STREET, 25TH FLOOR
NEW HAVEN, CT 06510
203-821-3700

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 23, 2020, a copy of foregoing was served electronically (by email) on all parties.


*/s/ Margaret Donovan*

MARGARET DONOVAN
ASSISTANT U.S. ATTORNEY